Andrew J. Guzzo (HI-SBN 010586)
Kelly Guzzo, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 400
Honolulu, HI 96813
Telephone: 808-543-1122
Email: aguzzo@kellyguzzo.com
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

| | |
|---|---|
| WHITNEY WHITE,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC and TRANS UNION, LLC,<br><br>Defendants. | Case No. 1:26-cv-460<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Whitney White files this Complaint against Defendants Equifax Information Services, LLC and Trans Union, LLC. In support, she alleges as follows:

## PRELIMINARY STATEMENT

1. Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers

from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2. The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3. Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4. Here, Ms. White's credit reports included fraudulent student loans that didn't belong to her.

5. When Ms. White disputed this inaccurate information with the Defendants and provided proof demonstrating that she had not authorized the student loans, both of the Defendants failed to adequately investigate her disputes or update the inaccurate entries on her credit reports.

6. As a result, Ms. White alleges that both Defendants violated the FCRA, § 1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports. *See Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means to make sure or certain: put beyond all doubt, 'maximum' means the greatest in quantity or highest degree attainable, and 'possible' means something falling within the bounds of what may be done, occur or be conceived" (cleaned up) (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993))).

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

7. Ms. White also alleges that each of the Defendants violated the FCRA, §1681i, by failing to fully investigate her disputes.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Ms. White resides in this District and Division, and a substantial part of the events giving rise to Ms. White's claims occurred here.

## PARTIES

10. Plaintiff Whitney White is a natural person residing in this District and Division.

11. Defendant Equifax is a foreign limited liability company with a principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

12. Defendant Trans Union is a foreign limited liability company with a principal place of business in Chicago, Illinois. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

13. In April 2026, Ms. White learned that there was a Department of Education student loan serviced by Nelnet reporting on her credit reports. The loan was used at Grand Canyon University.

14. This student loan did not belong to Ms. White—she did not apply for the loan or authorize anyone to obtain the loan in her name.

15. Ms. White has never attended Grand Canyon University.

16. Ms. White eventually learned that the loan was opened in 2025 using a copy of Ms. White's California driver's license that expired in 2023—two years before the loan's origination.

17. The loan was also opened using an email address that Ms. White has never used or had access to.

18. The loan also listed two references that, per the promissory note, were required to be the borrower's parent or legal guardian: (1) Kathleen Ramos, who has never been Ms. White's parent or legal guardian, and (2) Denis White, who was Ms. White's father, but who passed away in 2022—three years before the loan's origination—and who was listed on the loan without his correct suffix.

19. In addition, the FAFSA Submission Summary associated with the loan reflected that Ms. White attended Hayward High School in California. This was inaccurate: Ms. White attended Rio Americano High School.

20. Finally, the loan application did not list Ms. White's middle name and listed an incomplete address where Ms. White had not lived since 2019.

21. In short, there were multiple indications that Ms. White was the victim of identity theft and did not obtain or authorize the loan that Nelnet attributed to her on her credit reports.

22. Ms. White raised these issues with Nelnet directly, but it refused to acknowledge that loan was the result of identity theft.

23. Ms. White submitted approximately four online disputes to Equifax and Trans Union between April 2026 and June 2026 explaining that the loans were fraudulent and that she was the victim of identity theft. In each dispute, she asked that the fraudulent student loan be deleted from her credit reports.

24. Upon information and belief, Equifax and Trans Union forwarded each of Ms. White's disputes to Nelnet or another Department of Education loan servicer.

25. Upon information and belief, in response to Ms. White's disputes, Nelnet or another Department of Education loan servicer performed a cursory review of its records and verified its previous inaccurate reporting, even though any meaningful investigation would have revealed that Ms. White did not authorize the loan.

26. Equifax and Trans Union relied entirely on the loan servicer's response to Ms. White's disputes.

27. As a result, the inaccurate information continued to report on Ms. White's credit reports.

28. In the meantime, Ms. White provided information regarding the identity theft to Grand Canyon University, which acknowledged that she was the victim of identity theft and adjusted the fraudulent account balance to $0.

29. Ms. White sent follow-up disputes to Equifax and Trans Union in July 2026. These follow-up disputes again explained that the student loan was fraudulent. She described the discrepancies in the loan application and loan documents, and asked that the student loan be deleted from her credit reports.

30. Equifax and Trans Union again used the same defective investigation process to "investigate" and respond to Ms. White's disputes—instead of reviewing the proof that Ms. White included in her dispute, they merely relied on the loan servicer to investigate and respond to the disputes.

31. As a result, when Equifax and Trans Union received the loan servicer's dispute responses that the previous reporting was correct, they did not update Ms. White's credit reports to remove the fraudulent student loan from her reports.

32. As a result of Defendants' conduct, Ms. White has suffered significant actual damages, including a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

***Defendants' Investigations Willfully Violated the FCRA***

33. As a standard practice, Equifax and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely

parrot the response of the furnisher despite several court decisions admonishing this practice. *See, e.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

34. Upon information and belief and consistent with their standard policies and procedures, Equifax and Trans Union automatically generated their "investigation" results once Nelnet verified the status of the accounts. Equifax and Trans Union did not take any extra actions to verify the accuracy of the information that Nelnet provided them.

35. Instead, Equifax and Trans Union blindly accepted the Nelnet's version of the facts and continued to report the inaccurate, derogatory information on Ms. White's credit report.

36. Equifax and Trans Union continue the practice of parroting the furnishers' response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

37. Equifax and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

38. As a result, at all times relevant to this Complaint, Defendants' conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, their conduct was willful because they ran a risk of harm that was known, or so obvious it should have been known, by failing to adequately investigate consumer disputes or implement any procedure to identify and correct these common errors before furnishing reports.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)

39. Ms. White incorporates the preceding allegations.

40. Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. White's credit reports and credit files that they published and maintained.

41. Because of Defendants' conduct, Ms. White suffered actual damages, including, without limitation, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

42. Defendants' conduct in violating § 1681e(b) was willful, rendering them liable to Ms. White for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

43. In the alternative, the Defendants were negligent, entitling Ms. White to a recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**

44. Ms. White incorporates the preceding allegations.

45. Defendants violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide the furnishers with all the relevant information about Ms. White's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. White in violation of §1681i(a)(4); and (4) failing to promptly delete the disputed inaccurate items of information from Ms. White's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

46. Because of Defendants' violations of §1681i, Ms. White suffered actual damages, including, but not limited to, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

47. Defendants' violations of § 1681i were willful, rendering them liable to Ms. White for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

48. In the alternative, the Defendants were negligent, entitling Ms. White to a recovery under 15 U.S.C. § 1681o.

WHEREFORE, Ms. White moves for statutory, actual, and punitive damages as pleaded, as well as her attorneys' fees and costs against each of the Defendants; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court considers appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**WHITNEY WHITE**

*/s/ Andrew J. Guzzo*
Andrew J. Guzzo (HI-SBN 010586)
Kelly Guzzo, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 400
Honolulu, HI 96813
Telephone: 808-543-1122
Email: aguzzo@kellyguzzo.com
*Counsel for Plaintiff*